UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Scott Malcolm and Tim McGough,          Civil No. 05-2099 (JRT/FLN)
as Trustees of the Carpenters & Joiners
Welfare Fund, Twin City Carpenters
Pension Master Trust Fund, Carpenters
and Joiners Apprenticeship and Journeymen
Training Trust Fund, and Twin City Carpenters
Vacation Fund; and each of their successors,

        Plaintiffs,

        v.                                   **REPORT AND RECOMMENDATION**

Vertical Horizon, Inc., Vertical Horizon
Construction LLC and Michael Shawn Lowery,

        Defendants.

_____

Pamela Hodges Nissen for Plaintiffs
Jean B. Roth and Stephen H. Parsons for Defendants

_____

**THIS MATTER** came before the undersigned United States Magistrate Judge on January 16, 2008, pursuant to the District Court's Order [#93] referring this matter for an evidentiary hearing to determine the amount of unpaid fringe benefit contributions. On May 24, 2007, Plaintiffs were granted summary judgment on their claim for unpaid fringe benefit contributions and liquidated damages. The Court denied Plaintiffs' summary judgment motion as it related to Defendants' counterclaim, which sought to compel Plaintiffs to provide to Defendants the accounting Plaintiffs are contractually obligated to provide. Plaintiffs were ordered to provide an accounting to Defendants. (*See* Memorandum Opinion and Order, Docket No. 44.) Thereafter at a case management conference, Defendants claimed that Plaintiffs accounting was inadequate, and

the Court ultimately ordered this evidentiary hearing. The matter was referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1.

During the hearing on this matter, the Court received thirteen exhibits from the Plaintiffs and eighteen exhibits from the Defendants. (*See* Exhibit List, Docket No. 106.) The Court also received testimonial evidence from Jason Wolfe on behalf of the Plaintiffs and Michael Shawn Lowery on behalf of the Defendants. For the reasons that follow, this Court finds as a fact that the Defendants owe $24,762.97 in unpaid fringe benefit contributions and liquidated damages. The Court recommends that the judgment previously entered [#45] be amended to reflect that amount. The Court further concludes that the accounting to which Defendants are entitled has now been provided, and their counterclaim, by which they sought to compel the accounting, is now moot.

## I.     FINDINGS OF FACT

### A.     BACKGROUND

Defendant Michael Shawn Lowery is a carpentry contractor that provided services on the Sears/Midtown Exchange Project from January 2005 to August 2005. Defendant Lowery provided these services through his companies Defendants Vertical Horizon, Inc., and Vertical Horizon Construction LLC. Defendants served as a sub-contractor for another sub-contractor on the project, St. Cloud Windows, Inc. Defendants are parties to a collective bargaining agreement ("CBA") that obligates them to make certain payments to Plaintiffs for every hour worked by a union carpenter doing work covered by this CBA.

Prior to this evidentiary hearing, the parties entered into a Stipulation [#105] narrowing the issues for decision during the evidentiary hearing. The parties stipulated that Defendants' total

amount of contributions due to Plaintiffs was either $104,630.87 or $106,614.01 depending on whether the Court determines that Patrick Magnuson performed work covered under the CBA. (Stipulation, Docket No. 105, ¶ 2.)  The parties also stipulated that the Plaintiffs had received $84,381.93 in cash payments from or on behalf of Defendants.  (*Id*. at ¶ 1.)  Defendants claim they are entitled to an additional credit of $5,059.48 on account of a lien waiver associated with a payment made by St. Cloud Windows on Defendants' behalf.  (*Id*. at ¶ 4.)

### B.  WORK PERFORMED BY PATRICK MAGNUSON

Patrick Magnuson was employed by Defendants to work on the Sears/Midtown Exchange Project during July and August of 2005.  During his employment on the Sears/Midtown Exchange Project, Magnuson had a broken arm, which prevented him from performing any carpentry work. Defendant Lowery testified that Magnuson performed non-carpentry work, such as running errands, clerical duties, and cleaning up.

During the performance of an audit in August 2005, the auditor for Wilson-McShane Corporation, the third party administrator for Plaintiffs' funds, made the following audit note: "Patrick Magnuson started 2 seeks ago. Broken arm. Wants to join apprenticeship program." (Def. Ex. 17, Sub-Ex. 5.)  On September 21, 2005, Patrick J. Magnuson received a letter, and Defendants received a copy of the letter, from the Lake and Plains Regional Council of Carpenters and Joiners informing them that "[Magnuson's] application for apprenticeship is no longer being considered. Reason: Non-attendance at related training."  (Def. Ex. 13.)

### C.  PAYMENT MADE BY ST. CLOUD WINDOWS ON BEHALF OF DEFENDANTS

On September 26, 2005, Wilson-McShane submitted an invoice to St. Cloud Windows for fringe benefit contributions unpaid by Defendants.  (Def. Ex. 3.)  The invoice covered unpaid

contributions from June 2005 through August 2005. (*Id*.) Jason Wolfe, the director of auditing for Wilson-McShane, testified that the invoices were submitted to St. Cloud Windows because they were the contractor on the project that sub-contracted the work at issue to Defendants.

The invoice to St. Cloud Windows included $23,094.14 in unpaid contributions and $5,059.48 in liquidated damages[1] and an account adjustment.[2] (*Id*.) St. Cloud Windows submitted a payment for $23,094.14, representing only the unpaid benefit contributions, and executed a lien waiver with Wilson-McShane. (Def. Ex. 4.) The lien waiver states in relevant part that:

> The undersigned hereby acknowledges receipt of the sum of $23,094.14 as full and final payment for all labor benefits furnished to the following described real property: Sears/Midtown Exchange ... . And for value received hereby waives all rights acquired by the undersigned to file or record mechanic's liens against said real property for labor, skill, or material furnished to said real property ... . The undersigned affirms that all material furnished by the undersigned has been paid for, and all subcontractors employed by the undersigned have been paid in full ... .

(*Id*.) The waiver is signed by a representative of Wilson-McShane. (*Id*.) The form contains the following phrases to indicate the nature of the payment for which the lien is being given: (1) "[a]s partial payment for labor skill and material furnished"; (2) "[a]s payment for all labor, skill, and material furnished or to be furnished ([e]xcept the sum of $_____ retainage or holdback)"; and (3) "as full and final payment for all labor benefits furnished." (*Id*.) There is a box next to each phrase, to be checked if it applies to the payment at issue. The only box that was checked indicated inclusion of the third phrase. (*Id*.)

---

[1] The "liquidated damages" listed on the invoice represent liquidated damages incurred from June 2005 to August 2005. The "additional damages" listed on the invoice represent liquidated damages incurred from January 2005 to May 2005.

[2] The account adjustment was a $129.36 debit for an underpayment by Defendants. The underpayment resulted from a mathematical error by Defendants in calculating an amount due. Since this is an underpayment on the amount of fringe benefit contributions, this amount should be included in unpaid fringe benefit contributions.

**D. THE ACCOUNTING DISPUTE**

In their counterclaim Defendants sought to compel Plaintiffs to provide an accounting pursuant to their obligation under the Second Amended and Restated Agreement and Declaration of Trust of the Twin Cities Carpenters Pension Master Trust. (Def. Ex. 1.) In their counterclaim, Defendants asserted that the account was necessary because Plaintiffs had previously supplied conflicting documentation in support of their claim for unpaid contributions and liquidated damages. Plaintiffs sought summary judgment on this counterclaim. The Court denied Plaintiffs' summary judgment motion in so far as it related to Defendants' counterclaim for the accounting. Observing that the Plaintiffs have a contractual obligation to provide an accounting, and observing that Defendants disputed the amounts claimed by Plaintiffs, the Court ordered Plaintiffs to provide an accounting. If a genuine issue remained regarding the amount of Plaintiffs' claim, the Court said it could revisit the issue of the amount of the judgment to which Plaintiffs were entitled.

At the case management conference held in August, Defendants claimed that the accounting Plaintiffs had provided was inadequate. At the conference, it was agreed among the parties and the Court that Plaintiffs would provide Defendants with additional information. The parties' disagreement over the adequacy of the accounting escalated. As a result, the Court scheduled this hearing. In advance of the hearing, the parties entered into a stipulation that resolved much of the dispute.

**II. CONCLUSIONS OF LAW**

In light of the the parties' stipulation, the undersigned need only determine two issues. The first issue is whether Patrick Magnuson performed covered work under the CBA. The second issue is whether the lien waiver executed between St. Cloud Windows and Wilson-McShane entitles Defendants to an additional credit of $5,059.48.

### A.  PATRICK MAGNUSON DID NOT PERFORM COVERED WORK.

Under the Agreement and Declaration of Trusts for funds managed by Plaintiffs, "[e]ach employer shall make ... payments to the Trust Fund in such amount and under the terms as are provided in the applicable collective bargaining agreement." (Agreements and Declaration of Trusts, Art. IV, Sec. 4.1, Def. Ex. 1.)  The CBA requires the employer to make a payment for "each hour worked by all employees covered by [the Collective Bargaining Agreement]." (CBA, Art. 15, Pl. Ex. 11.)  Employees covered by the CBA are members of the Lakes and Plains Regional Coucil of Carpenters and Joiners ("Carpenters Union"), which represents carpenters, piledrivers, and their apprentices.  (CBA, Art. 2, Pl. Ex. 11.)

Magnuson was not a member of the Carpenters Union and did not perform work covered by the CBA.  Defendants were not required to submit fringe benefit contributions on his behalf.  Magnuson had a broken arm that prevented him from performing carpentry work.  Magnuson ran errands, engaged in clerical work, and assisted in cleaning up as needed.  While there is evidence indicating that Magnuson had a desire to join the Carpenters Union and work as an apprentice carpenter, no evidence suggests that he actually joined the Carpenters Union or provided carpentry work.  In fact, he abandoned his application to join the union.  Based upon the evidence presented, the Court finds that Magnuson did not perform work covered by the CBA and Defendants do not owe fringe benefit contributions for work he did.

### B.  THE LIEN WAIVER DOES NOT CONSTITUTE AN ADDITIONAL CREDIT FOR DEFENDANTS.

Defendants argue that when St. Cloud Windows made a payment of $23,094.14 on an invoice for $28,153.99 and executed a lien waiver with Wilson-McShane accepting the $23,094.14 as full and final payment for all labor benefits furnished, it relieved Defendants of the obligation to

pay $5,059.48, which represents the difference between the invoiced amount and the amount paid by St. Cloud Windows. Plaintiffs argue that the lien waiver does not change Defendants' obligation to pay the liquidated damages. Plaintiffs claim that St. Cloud Windows only paid and the agreement only contemplated the amount of unpaid fringe benefit contributions because a lien can only be sought on unpaid fringe benefit contributions, not liquidated damages.

The Court agrees with Plaintiffs. The lien waiver does not serve as a general release. Plaintiffs did not agree to waive any right to the $5,059.48. Instead, Plaintiffs only waived their right to assert a lien on the Sears/Midtown Exchange building. By the terms of the agreement, Plaintiffs are not prevented from seeking payment of the $5,059.48, so long as they do not seek to impose a lien on the Sears/Midtown Exchange building. Therefore, Plaintiffs have not waived their right to collect the $5,059.48 in this action from Defendants.

In the alternative, the Court concludes that even if the lien waiver did serve the broader purpose of generally releasing any claim described in the waiver, the phrase "labor benefits" includes only benefit contributions due to Plaintiffs on account of wages paid for work covered by the CBA. The phrase does not include any liquidated damages that might be due on account of the employer's delinquency in making the required payments. The lien waiver even if viewed as a release would not release Plaintiffs' claim to the unpaid liquidated damages.

### C.     CALCULATION UNPAID FRINGE BENEFIT CONTRIBUTIONS

For the period from January 1, 2005, through September 1, 2005, Defendants owe the Plaintiffs $104,630.87 in fringe benefit contributions based upon the stipulated amount of fringe benefit contributions owed if Magnuson did not perform work covered by the CBA. Defendants have submitted cash payments in the amount of $84,381.93. Therefore, Defendants owe $20,248.94 in unpaid fringe benefit contributions. Plaintiffs' claim of liquidated damages included damages

incurred on behalf of Magnuson, therefore the liquidated damages must be reduced by $198.32 to $4,384.67. Defendants also owe a $129.36 account adjustment, which represents an amount of unpaid fringe benefit contributions. The total amount due to Plaintffs in unpaid fringe benefit contributions and liquidated damages is $24,762.97.

### D.   THE ACCOUNTING ISSUE

In light of the stipulation of the parties [# 105], and the full evidentiary hearing on the amount in dispute, Plaintiffs have now fully complied with the Court's order to provide Defendants with an accounting.

### RECOMMENDATION

Based upon all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that the

1. The judgment [#45] previously entered in this case on May 24, 2007, be amended to reflect that the portion of the judgment that consisted of delinquent fringe benefit contributions and liquidated damages be reduced from $27,448.06 to $24,762.97.

2. The Court find that Plaintiffs have satisfied their obligation to provide an accounting pursuant to the May 24, 2007, Order.

DATED: January 18, 2008              *s/ Franklin L. Noel*
                                     FRANKLIN L. NOEL
                                     United States Magistrate Judge


Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **February 7, 2008**, written objections which specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within ten days after service thereof. All briefs filed under the rules shall be limited to 3500 words. A judge shall make a de novo determination of those portions to which objection is made.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.